## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P. | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. 07-361-GMS |
| COMCAST CORPORATION; COMCAST OF NEW CASTLE COUNTY, LLC; COMCAST OF DELMARVA, INC.; COMCAST OF EASTERN SHORE, LLC; COMCAST OF CALIFORNIA II, LLC; COMCAST OF CALIFORNIA/COLORADO, LLC; COMCAST OF ARKANSAS/ FLORIDA/LOUISIANA/ MINNESOTA/ MISSISSIPPI/ TENNESSEE, INC.; COMCAST OF COLORADO/ PENNSYLVANIA/WEST VIRGINIA, LLC; COMCAST OF FLORIDA/ILLINOIS/ MICHIGAN, INC.; COMCAST OF GARDEN STATE, L.P.; COMCAST OF HOUSTON, LLC; GEICO CORPORATION; GOVERNMENT EMPLOYEES INSURANCE COMPANY; GEICO GENERAL INSURANCE COMPANY; GEICO INDEMNITY COMPANY; GEICO CASUALTY COMPANY; XM SATELLITE RADIO HOLDINGS INC.; XM SATELLITE RADIO, INC.; XM RADIO, INC.; XM EQUIPMENT LEASING, LLC; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## THE COMCAST DEFENDANTS' ANSWER AND COUNTERCLAIMS TO AMENDED COMPLAINT FOR PATENT INFRINGEMENT

The Comcast Defendants set forth the following answer, affirmative defenses and counterclaims (the "Answer") to Plaintiff Ronald A. Katz Technology Licensing, L.P.'s ("RAKTL's") Amended Complaint for Patent Infringement (the "Complaint").[1]

### ANSWER

1.      The Comcast Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 1.

2-13.   Admitted except averred that Comcast Cable Communications, LLC, Comcast of New Castle County, LLC, Comcast of Eastern Shore, LLC, Comcast of California II, LLC, Comcast of California/Colorado, LLC, Comcast of Colorado/Pennsylvania/West Virginia, LLC, and Comcast of Houston, LLC are Delaware limited liability companies and Comcast of Garden State, L.P. is a Delaware limited partnership.

14-21.  The allegations in paragraphs 14-21 are not directed to the Comcast Defendants and therefore no answer is required.

22-23.  Admitted that RAKTL purports to assert a claim for patent infringement arising under the laws of the United States of America, 35 U.S.C. § 101 et seq. and that this Court has subject matter jurisdiction over this action pursuant to 35 U.S.C. § 1331 and 28 U.S.C. § 1338(a). Further admitted that the Comcast Defendants are subject to this Court's personal jurisdiction. The Comcast Defendants deny operation of infringing automated call processing

---

[1] As used herein, "the Comcast Defendants" refers collectively to the Comcast entities named as defendants to the Complaint: Comcast Corporation, Comcast Cable Communications, LLC, Comcast of New Castle County, LLC, Comcast of Delmarva, Inc., Comcast of Eastern Shore, LLC, Comcast of California II, LLC, Comcast of California/Colorado, LLC, Comcast of Arkansas/Florida/Louisiana/Minnesota/Mississippi/Tennessee, Inc., Comcast of Colorado/Pennsylvania/West Virginia, LLC, Comcast of Florida/Illinois/Michigan, Inc., Comcast of Garden State, L.P., and Comcast of Houston, LLC.

systems.  To the extent that any of the remainder of these allegations is intended as a basis for liability as to the Comcast Defendants, it is denied.

24-25.  The allegations in paragraphs 24 and 25 are not directed to the Comcast Defendants and therefore no answer is required.

26.    Admitted that venue is proper in this Court as to the Comcast Defendants.

27-37.  The Comcast Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraphs 27 through 37.

38.    Admitted that Comcast Corporation and Comcast Cable Communications, LLC have engaged in discussions with RAKTL and that, subject to the allegations of the Comcast Defendants' Fourth Affirmative Defense and Counterclaims III and IV below, the Comcast Defendants have not contracted directly with RAKTL with regard to a license.  To the extent the allegations in paragraph 38 are not directed to the Comcast Defendants, no answer is required. All other allegations and/or implications in paragraph 38 are denied.

39-61.  The allegations in paragraphs 39 through 48, 50-55, and 57-60 assert legal conclusions to which no answer is required.  The allegations in these paragraphs also purport to describe U.S. Patent Nos. 4,792,968; 4,930,150; 5,128,984; 5,251,252; 5,255,309; 5,351,285; 5,561,707; 5,684,863; 5,815,551; 5,828,734; 5,898,762; 5,917,893; 5,974,120; 6,035,021; 6,148,065; 6,292,547; 6,349,134; 6,424,703; 6,434,223; 6,512,415; and 6,678,360 (collectively, the "patents-in-suit").  Accordingly, the Comcast Defendants refer to the documents for their content.  To the extent the allegations contained in these paragraphs make factual allegations to which a response is required, they are denied.  Paragraphs 49 and 56 are not directed to the Comcast Defendants and therefore no answer is required.

3

62.     The Comcast Defendants incorporate by reference their responses in paragraphs 1-61 of this Answer as if fully set forth herein.

63.     Admitted that the Comcast Defendants provide such services in much of the United States.  Otherwise denied.

64.     Admitted that the Comcast Defendants use call processing systems for customer service, pay-per-view ordering, voicemail, and technical support functions, but denied that the Comcast Defendants' systems are infringing.  The remainder of the allegations of Paragraph 64 are denied.

65.     The Comcast Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 65.

66-69.  Denied.

70-85.  The allegations of paragraphs 69 through 84 are not directed to the Comcast Defendants and therefore no answer is required.

## GENERAL DENIAL

The Comcast Defendants deny each and every allegation of RAKTL's Complaint (including the Prayer for Relief) that herein has neither been admitted nor controverted.

## AFFIRMATIVE DEFENSES

The Comcast Defendants assert the following defenses to the Complaint:

### First Affirmative Defense

On information and belief, the Comcast Defendants have not directly infringed, contributed to the infringement of, and/or actively induced the infringement of any valid claim of any of the patents-in-suit.

4

### Second Affirmative Defense

On information and belief, each of the patents-in-suit is invalid by reason of having been issued in violation of the United States patent laws, Title 35 United States Code, including violations of Sections 102, 103, 112, 115 and/or 116 thereof, the Rules and Regulations of the Patent & Trademark Office relating thereto, and/or the doctrines on double-patenting.

### Third Affirmative Defense

On information and belief, the relief sought by RAKTL is barred by waiver, laches, acquiescence and/or estoppel.

### Fourth Affirmative Defense

On information and belief, some or all of the Comcast Defendants' allegedly infringing activities are and have been authorized pursuant to one or more license agreement(s) with RAKTL. As a matter of law, the Comcast Defendants' allegedly infringing activities undertaken while under license do not constitute and have not constituted patent infringement under 35 U.S.C. § 271.

### Fifth Affirmative Defense

On information and belief, RAKTL's claims against certain of the Comcast Defendants for allegedly infringing activities have been discharged in whole or in part in bankruptcy.

### Sixth Affirmative Defense

On information and belief, certain of the patents-in-suit are unenforceable due to inequitable conduct on the part of RAKTL, Ronald A. Katz, and/or their agents and attorneys during prosecution before the United States Patent and Trademark Office ("USPTO"), as described with particularity in Count V of the Comcast Defendants' Counterclaims (below).

5

Count V of the Comcast Defendants' Counterclaims is incorporated by reference herein as if set forth in full.

## THE COMCAST DEFENDANTS' COUNTERCLAIMS AGAINST KATZ

For their counterclaims against RAKTL, the Comcast Defendants allege as follows:

## THE PARTIES

1.      Counterclaim Plaintiff Comcast Corporation is a Pennsylvania corporation with its principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102.

2.      Counterclaim Plaintiff Comcast Cable Communications, LLC is a Delaware limited liability company with a principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102.

3.      Counterclaim Plaintiff Comcast of New Castle County, LLC is a Delaware limited liability company with a principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102.

4.      Counterclaim Plaintiff Comcast of Delmarva, Inc. is a Delaware corporation with a principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102.

5.      Counterclaim Plaintiff Comcast of Eastern Shore, LLC is a Delaware limited liability company with a principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102.

6.      Counterclaim Plaintiff Comcast of California II, LLC is a Delaware limited liability company with a principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102.

7.      Counterclaim Plaintiff Comcast of California/Colorado, LLC is a Delaware limited liability company with a principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102.

8.      Counterclaim Plaintiff Comcast of Arkansas/Florida/Louisiana/Minnesota/ Mississippi/Tennessee, Inc. is a Delaware corporation with a principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102.

9.      Counterclaim Plaintiff Comcast of Colorado/Pennsylvania/West Virginia, LLC is a Delaware limited liability company with a principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102.

10.     Counterclaim Plaintiff Comcast of Florida/Illinois/Michigan, Inc. is a Delaware corporation with a principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102.

11.     Counterclaim Plaintiff Comcast of Garden State, L.P. is a Delaware limited partnership with a principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102.

12.     Counterclaim Plaintiff Comcast of Houston, LLC is a Delaware limited liability company with a principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19102.

13.     On information and belief, Counterclaim Defendant Katz Technology Licensing, L.P. is a California limited partnership with a principal place of business at 9220 Sunset Boulevard, Suite 315, Los Angeles, California 90069.

## JURISDICTION AND VENUE

14.    The Comcast Defendants' counterclaims arise under the patent laws of the United States, Title 35 of the United States Code, and the Declaratory Judgment provisions of §§ 2201 and 2202 of Title 28 of the United States Code.

15.    This Court has original jurisdiction over the Comcast Defendants' counterclaims based on 28 U.S.C. §§ 1331, 1332 and 1338(a) and the Declaratory Judgment Act.  This is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interests, seventy-five thousand dollars ($75,000.00).

16.    Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400.

## COUNT I – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE PATENTS-IN-SUIT

17.    The Comcast Defendants restate and reallege the allegations set forth in paragraphs 1-16 above and incorporate them by reference.

18.    On information and belief, the Comcast Defendants have not directly infringed, contributed to the infringement, or actively induced the infringement of any valid claim of any of U.S. Patent Nos. 4,792,968 (the "'968 patent"); 4,930,150 (the "'150 patent"); 5,128,984 (the "'984 patent"); 5,251,252 (the "'252 patent"); 5,255,309 (the "'309 patent"); 5,351,285 (the "'285 patent"); 5,561,707 (the "'707 patent"); 5,684,863 (the "'863 patent"); 5,815,551 (the "'551 patent"); 5,828,734 (the "'734 patent"); 5,898,762 (the "'762 patent"); 5,917,893 (the "'893 patent"); 5,974,120 (the "'120 patent"); 6,035,021 (the "'021 patent"); 6,148, 065 (the "'065 patent"); 6,292,547 (the "'547 patent"); 6,349,134 (the "'134 patent"); 6,424,703 (the "'703 patent"); 6,434,223 (the "'223 patent"); 6,512,415 (the "'415 patent"); or 6,678,360 (the

"'360 patent") (collectively, the "patents-in-suit"), nor have the Comcast Defendants otherwise committed any acts of infringement of any rights of RAKTL.

## COUNT II – DECLARATORY JUDGMENT OF INVALIDITY
## OF THE PATENTS-IN-SUIT

19.    The Comcast Defendants restate and reallege the allegations set forth in paragraphs 1-16 above and incorporate them by reference.

20.    On information and belief, the patents-in-suit are invalid by reason of having been issued in violation of the U.S. patent laws, Title 35 United States Code, including violations of Sections 102, 103, 112, 115 and/or 116 thereof, the Rules and Regulations of the Patent & Trademark Office relating thereto, and/or the doctrines on double-patenting.

## COUNT III – BREACH OF LICENSING AGREEMENT

21.    The Comcast Defendants restate and reallege the allegations set forth in paragraphs 1-16 above and incorporate them by reference.

22.    As of October 15, 1996, RAKTL entered into a written license agreement (the "CCH License Agreement") with Tele-Communications, Inc. ("TCI"), now known as Comcast Cable Holdings, LLC ("CCH"), whereby TCI and its "Affiliates" (as defined in the CCH License Agreement), among others, were granted a field-of-use license relating to various Katz patents. .

23.    As of March 20, 2000, AT&T Corp. acquired control of TCI, which was converted from a Delaware corporation to a Delaware limited liability company and renamed AT&T Broadband, LLC.

24.    On November 19, 2002, Comcast Corp. acquired control of AT&T Broadband, LLC. AT&T Broadband, LLC's name was changed to "Comcast Cable Holdings, LLC" (CCH).

25.    On June 7, 2007, RAKTL filed the Complaint, alleging patent infringement on the part of the Comcast Defendants.

26.    The field-of-use license granted by the CCH License Agreement extends to each of the patents-in-suit asserted against the Comcast Defendants in the Complaint.

27.    Each of the Comcast Defendants is an entity controlling, controlled by, or under common control with CCH and, as such, is an "Affiliate" of CCH as defined by the CCH License Agreement, an intended third party beneficiary thereof, and a licensee thereunder.

28.    RAKTL has denied that the Comcast Defendants are "Affiliates" as defined by the CCH License Agreement and has denied that they are licensees under that agreement.

29.    CCH has fully performed in all material respects its obligations, including without limitation its payment obligations, under the CCH License Agreement.

30.    Each of the Comcast Defendants has fully performed in all material respects its obligations, if any, under the CCH License Agreement.

31.    RAKTL has materially breached the CCH License Agreement by denying that the Comcast Defendants are licensees under that agreement and by filing the *Katz v. Comcast* lawsuit accusing the Comcast Defendants of infringing patents covered by the CCH License Agreement.

32.    The Comcast Defendants have been damaged by RAKTL's breach of the CCH License Agreement and are entitled to specific performance by RAKTL of RAKTL's obligations under the terms of the CCH License Agreement.

## COUNT IV – DECLARATORY JUDGMENT OF AUTHORIZATION PURSUANT TO LICENSE

33.    Comcast restates and realleges the allegations set forth in paragraphs 1-16 and 21-32 above and incorporates them by reference.

34.    There is a justiciable controversy within the meaning of 28 U.S.C. §§ 2201 and 2202 between RAKTL and the Comcast Defendants with respect to whether each of the Comcast Defendants is, and has been for so long as it has been controlled by, controlling, or under common control with CCH, an "Affiliate" of CCH as defined by the CCH License Agreement, and as such, licensed to use the patents-in-suit within the field of use of the CCH License Agreement.

### COUNT V – DECLARATORY JUDGMENT OF UNENFORCEABILITY

35.    The Comcast Defendants reallege and incorporate the averments of Paragraphs 1 through 16, inclusive, of their Counterclaims as if fully set forth herein.

36.    There is an actual and justiciable controversy between the parties concerning the unenforceability of the patents asserted against the Comcast Defendants.

37.    Title 37 of the Code of Federal Regulations ("CFR") § 1.56 and the Manual for Patent Examination Procedure ("MPEP") § 2000.01, *et seq.* impose a duty of candor and good faith on each individual associated with the filing and prosecution of a patent application before the USPTO, which requires he or she to disclose to the USPTO all information that is material to the patentability of the application under examination. Breach of this duty of candor, good faith and honesty with an intent to deceive the USPTO constitutes inequitable conduct so as to render the affected patents unenforceable.

38.    On information and belief, Ronald A. Katz and/or individuals associated with prosecution of his patents acting on his behalf or on behalf of his assigns (hereinafter, "Katz"), with the intent to deceive the USPTO into issuing patent claims of a scope beyond any to which Katz was entitled, exercised a pattern and practice of conduct as part of the prosecution of the applications that ultimately led to the patents asserted against the Comcast Defendants and of related applications that violated the duty of candor, good faith and honesty owed by patent applicants.

39.    In addition to the aforementioned patents asserted against the Comcast Defendants, other related patents and applications, to which the patents asserted against the Comcast Defendants claim priority, are relevant to the Counterclaim of unenforceability based on Katz's inequitable conduct.  These related patents include U.S. Patent Nos. 4,845,739 ("the '739 patent"), 5,014,298 ("the '298 patent"), 5,048,075 ("the '075 patent"), 5,073,929 ("the '929 patent"), 5,218,631 ("the '631 patent"), 5,224,153 ("the '153 patent"), 5,359,645 ("the '645 patent"), 5,365,575 ("the '575 patent"), 5,787,156 ("the '156 patent"), 5,793,846 ("the '846 patent"), 5,835,576 ("the '576 patent"), 6,016,344 ("the '344 patent"), and 6,151,387 ("the '387 patent").  The related applications include U.S. Patent Application Nos. 06/753,299 ("the '299 application"), 07/342,506 ("the '506 application") and 07/640,337 ("the '337 application").

40.    On information and belief, on multiple occasions as part of the prosecution of the patents asserted against the Comcast Defendants and of related patents and/or applications and with the intent to deceive the USPTO, Katz intentionally: (I) failed to disclose material prior art known to Katz; (II) failed to inform the USPTO of inconsistent positions taken during prosecution; (III) failed to identify or disclose material information from related litigations or proceedings; (IV) failed to inform patent examiners of adverse findings by others; and (V) made

12

false claims of priority so as to avoid the prior art. These repeated and intentional violations of

Katz's duty of candor, good faith and honesty, which are described in detail below, render the

patents asserted against the Comcast Defendants invalid and unenforceable.

## I.    KATZ INTENTIONALLY FAILED TO DISCLOSE MATERIAL PRIOR ART.

41.    On information and belief, as part of the prosecution of the patents asserted

against the Comcast Defendants and related patents and applications, Katz repeatedly failed to

disclose material references known to Katz with the intent to deceive the USPTO, as set forth

below.

### A.    Katz intentionally failed to disclose the Barger patent.

42.    On information and belief, Katz had knowledge of U.S. Patent No. 4,071,698 to

Barger, Jr. *et al.* ("the Barger patent") at least as early as January 1989. Katz failed to disclose

the Barger patent to the USPTO patent examiner as part of the prosecution of several of the

patents asserted against the Comcast Defendants and related patents and/or applications,

including at least the '739, '150, '298, '929, '984 and '252 patents, which were pending as of, or

filed after, January 1, 1989.

43.    The Barger patent is prior art to the patents asserted against the Comcast

Defendants because it was filed in the USPTO on January 10, 1977, a full eight years before the

effective filing date of Katz's first patent.

44.    The Barger patent is material to the patents asserted against the Comcast

Defendants. The Barger patent discloses an automated interactive voice system for marketing

merchandise, such as audio recordings. A customer selects and listens to an audio sample and

may arrange payment by credit card or other means. The system maintains a complete record of

all transactions—including requests for demonstrations played by each customer—in order to

maintain current inventory records and determine trends. The system uses the transaction history to determine whether a customer is a "free loader" and limits the customer's access to the system accordingly.

45.     The system disclosed in the Barger patent is also capable of assigning a caller to an operator who obtains information from the customer and enters the information into a database. When the customer requests a specific demonstration, the operator enters the appropriate code into the system and the audio sample is played to the customer. On completion of the demonstration, the system returns the customer to a live operator, who will take the order or provide another audio sample for the caller to listen to.

46.     Because the Barger patent discloses many of the central features claimed by Katz, it would have been material to the USPTO in deciding whether to allow the claims of the patents asserted against the Comcast Defendants and related patents and/or applications. For example, the Barger patent discloses storing data entered by a caller in a record, limiting the number of times a caller can access the system, and entering credit card information.

47.     The materiality of the Barger patent to the patents asserted against the Comcast Defendants was confirmed by the USPTO Board of Patent Appeals and Interferences, which in Appeal No. 94-0834, Application Serial No. 07/640,337 (Feb. 17, 1998) affirmed a patent examiner's rejection of certain of Katz's pending claims based in part on the disclosure of the Barger patent.

48.     On information and belief, Katz had knowledge of the materiality and relevance of the Barger patent to the claims of the patents asserted against the Comcast Defendants that were prosecuted by Katz before the USPTO. On information and belief, Katz became aware of the Barger patent on or about December 1988 as part of the prosecution of an international

14

application (WO 87/000375), which is based on Katz's U.S. Patent Application No. 06/753,299 ("the '299 application"). As part of the prosecution of the WO 87/000375 application, the European Patent Office ("EPO") identified the Barger patent as "particularly relevant" in regard to the patentability of the claims. In addition, the EPO sent the international search report identifying the Barger patent as "particularly relevant" to Katz's European attorney, Mr. Graham F. Coles, on or about December 27, 1988.

49.    Notably, all of the patents asserted against the Comcast Defendants claim priority to the '299 application. Thus, the international search report put Katz on notice both of the existence and materiality of the Barger patent to the subject matter claimed in the patents asserted against the Comcast Defendants.

50.    On information and belief, Katz considered the Barger patent so significant that Katz ultimately acquired the patent by assignment through First Data Resources Inc. ("First Data") on November 19, 1990 and by subsequent assignment to RAKTL on September 17, 1994.

51.    Notwithstanding Katz's knowledge of the Barger patent, on information and belief, Katz failed to disclose this piece of prior art to the USPTO as part of the prosecution of at least the '739, '150, '298, '929, '984 and '252 patents.

52.    In addition, Katz did not disclose the existence of the Barger patent to the USPTO as part of the substantive prosecution of the '285 patent. Rather, Katz waited until after the Notice of Allowance was issued by the USPTO and after the issue fee was paid to disclose the Barger patent, only seven days before the '285 patent issued.

53.    On information and belief, Katz intentionally withheld the material Barger patent from the USPTO as part of the prosecution of at least the '739, '150, '298, '929, '984, '252 and '285 patents with the intent to deceive the USPTO into issuing patent claims of a scope beyond

that to which Katz was entitled, thereby committing inequitable conduct and rendering those patents unenforceable. These patents are either patents asserted against the Comcast Defendants, in the case of the '150, '984, '252 and '285 patents, and/or are patents from which patents asserted against the Comcast Defendants claim priority and which share related, material subject matter.

54.     The inequitable conduct committed by Katz with respect to at least the '739, '150, '298, '929, '984, '252 and '285 patents taints other related patents, which claim priority to these patents and which claim related subject matter to which the Barger patent is material, rendering these related patents unenforceable.

55.     At least the '893 and '703 patents, which are patents asserted against the Comcast Defendants, claim priority from and claim subject matter related to both the '150 and '285 patents to which the Barger patent is also material. Accordingly, at least the '893 and '703 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '150 and '285 patents.

56.     Likewise, at least the '863, '551, '984, '252, '734, '762, '893, '120, '065, '134, '703, '223, '021, '415, and '360 patents, which are patents asserted against the Comcast Defendants, all claim priority from and claim subject matter related to the '739 patent to which the Barger patent is also material. The close relationship between these children patents and the '739 parent patent is evidenced by the various terminal disclaimers filed by Katz as part of the prosecution of at least the '863, '551, '762, '893, '065, '134, '703 and '360 patents, effectively conceding that there is no patentable difference between the claimed subject matter in these patents and the '739 patent. Accordingly, at least the '863, '551, '984, '252, '734, '762, '893, '120, '065, '134, '703, '223, '021, '415 and '360 patents are likewise rendered unenforceable

due to the inequitable conduct committed by Katz as part of the prosecution of the related '739 patent.

57.     Similarly, at least the '134 patent, which is asserted against the Comcast Defendants, claims priority from and claims subject matter related to both the '153 and the '298 patents to which the Barger patent is also material. Accordingly, at least the '134 patent is likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '153 and the '298 patents.

58.     Likewise, at least the '734, '120 and '223 patents asserted against the Comcast Defendants claim priority from and claim subject matter related to both the '929, '984 and '252 patents to which the Barger patent is also material. The close relationship between the '734, '120 and '223 patents and the '984 parent patent is evidenced by terminal disclaimers filed by Katz as part of the prosecution of at least the '734, '120 and '223 patents, effectively conceding that there is no patentable difference between the claimed subject matter in these patents and the '984 patent. Accordingly, at least the '734, '120 and '223 patents are likewise rendered unenforceable due to inequitable conduct committed by Katz as part of the prosecution of the related '929, '984 and '252 patents.

59.     Accordingly, at least the '150, '285, '863, '551, '984, '252, '734, '762, '893, '120, '065, '134, '703, '223, '021, '415 and '360 patents asserted against the Comcast Defendants, are all rendered unenforceable for inequitable conduct due to Katz's intentional failure to disclose the Barger patent to the USPTO.

**B.      Katz intentionally failed to disclose the DeBruyn patent.**

60.     On information and belief, Katz had knowledge of European Patent No. 0032410 to DeBruyn ("the DeBruyn patent") at least as early as January 1989. Katz failed to disclose the

DeBruyn patent to the USPTO during the prosecution of certain of Katz's patents, including at least the '150, '984, '285 and '252 patents, which are patents asserted against the Comcast Defendants, as well as the related '739 and '929 patents. Except for the '968 and the '150 patent, all of the patents asserted against the Comcast Defendants claim priority to one or more of the '150, '984, '252, '285, '739 and '929 patents.

61.     The DeBruyn patent is prior art to the patents-in-suit because it was published by the EPO as European Patent Specification EP0032410A1 on July 22, 1981.

62.     The DeBruyn patent is material to the patents-in-suit. The DeBruyn patent discloses an interactive voice system for implementing a lottery. The system receives a call from a prospective player along with the player's telephone number. Speakers of different languages are accommodated by the same system by receiving calls dialed to different telephone numbers. A caller's access to the system may be restricted based on various criteria such as the number times a caller accesses the system per week or the amount wagered. DeBruyn also discloses issuing secret codes to prospective players that can also be entered into the system before access is granted to the caller.

63.     The DeBruyn patent discloses that, after a player gains access to the system, the player is cued to enter a lottery number using a telephone keypad. After the player enters the lottery number, the system stores the lottery number and the player's telephone number. The system will also parrot back to the caller the lottery number entered to confirm proper entry of the desired lottery number for play before subsequently disconnecting the call.

64.     Because the DeBruyn patent discloses many features relevant to Katz's claims, it would have been material to the USPTO in deciding whether to allow the claims of the patents-in-suit. For example, the DeBruyn patent discloses receiving a caller's telephone number

automatically from the telephone network, prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data and qualifying callers for limited access or limits on use. The DeBruyn patent also discloses qualifying callers based on the caller's telephone number.

65.     The DeBruyn patent is substantively identical to Canadian Patent No. 1,162,336 to DeBruyn ("The DeBruyn Canadian patent"), which has been relied on by the Director of the USPTO in ordering the reexamination of several of Katz's patents, including patents asserted against the Comcast Defendants, such as U.S. Patent No. 5,561,707 ("the '707 patent"), and patents related to the patents asserted against the Comcast Defendants, including U.S Patent No. 5,255,309 ("the '309 patent"). With respect to the '309 patent, for example, on information and belief, the Director stated: "In view of the teachings of [the DeBruyn Canadian Patent], a substantial new question of patentability is raised as to claim 23 of the ['309 patent], and a reexamination of all the patent claims as to the substantial new question of patentability is appropriate." Reexamination Control No. 90/006,976, Director Initiated Order For Reexamination mailed March 26, 2004, at 6. On information and belief, the Director has similarly determined that the DeBruyn patent anticipates, for example, at least one claim in the '707 patent under 35 U.S.C. § 102. Like most of the patents asserted against the Comcast Defendants, each of the '707 and '309 patents, on its face, is asserted by Katz to be a continuation of the '739 patent.

66.     Further, a patent examiner at the USPTO has determined that the DeBruyn Canadian patent anticipates at least claims 23, 25-37,41-43,46, 50 and 51 of the '309 patent under 35 U.S.C. § 102(b). Reexamination Control Nos. 90/006,976 and 90/007,092 [Merged Proceedings], Office Action mailed September 9, 2005, at 2, 9-19. The patent examiner has also

relied on the DeBruyn Canadian patent in rejecting claims 1, 7-12, 14, 20, 24, 32, 38-42 and 52-58 under 35 U.S.C. § 103. *Id.* at 2, 32-43.

67.    On information and belief, Katz became aware of the DeBruyn patent and its materiality to the subject matter claimed in the patents-in-suit by at least as early as January 1989. The same international search report that identified the Barger patent and, on information and belief, was sent to Katz's European attorney, Mr. Graham F. Coles, on December 27, 1988, also identified the DeBruyn patent as "particularly relevant" with respect to the patentability of the claims of Katz's '299 application.

68.    Notwithstanding Katz's knowledge of the DeBruyn patent and its materiality, on information and belief, Katz failed to disclose this material prior art to the USPTO as part of the prosecution of at least the '150, '075, '739, '929, '984 and '252 patents.

69.    In addition, Katz did not disclose the existence of the DeBruyn patent to the USPTO as part of the substantive prosecution of the '285 patent. Rather, Katz waited until after the Notice of Allowance was issued by the USPTO and after the issue fee was paid to disclose the DeBruyn patent, only seven days before the '285 patent issued.

70.    On information and belief, Katz intentionally withheld the material DeBruyn patent from the USPTO as part of the prosecution of at least the '150, '984, '252, '285, '739, '075, and '929 patents with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering those patents unenforceable. These patents are either patents asserted against the Comcast Defendants, in the case of the '150, '984, '252 and '285 patents, and/or are patents from which patents asserted against the Comcast Defendants claim priority and which share related, material subject matter.

71.    The inequitable conduct committed by Katz with respect to at least the '150, '285, '739, '075, '929, '984 and '252 patents taints other related patents, which claim priority to these patents and which claim related subject matter to which the DeBruyn patent is material, rendering these related patents unenforceable.

72.    At least the '285, '863, '551, '734, '762, '893, '120, '065, '134, '703, '223, '984, '252, '415, '309, '707, '021, '547 and '360 patents, which are patents asserted against the Comcast Defendants, all claim priority from and claim subject matter related to the '739 patent to which the DeBruyn patent is also material.  Accordingly, at least the '285, '863, '551, '734, '762, '893, '120, '065, '134, '703, '223, '984, '252, '415, '309, '707, '021, '547 and '360 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '739 patent.

73.    Likewise, at least the '893 and '703 patents, which are patents asserted against the Comcast Defendants, all claim priority from and claim subject matter related to both the '150 and '285 patents to which the DeBruyn patent is also material.  Accordingly, at least the '893 and '703 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '150 and '285 patents.

74.    Similarly, at least the '734, '120 and '223 patents, which are patents asserted against the Comcast Defendants, all claim priority from and claim subject matter related to both the '929, '984 and '252 patents to which the DeBruyn patent is also material.  The close relationship between these children patents and those to which they claim priority is evidenced by the various terminal disclaimers filed by Katz for at least the '734, '120 and '223 patents, effectively conceding that there is no patentable difference at least as between the subject matter claimed in the '734 patent and that disclosed in the '252 patent.  Accordingly, at least the '734,

'120 and the '223 patents are likewise rendered unenforceable due to inequitable conduct committed by Katz as part of the prosecution of the related '929, '984 and '252 patents.

75.    Accordingly, at least the '150, '984, '252, '285, '863, '551, '734, '762, '893, '120, '065, '134, '703, '223, '415, '309, '707, '021, '547 and '360 patents asserted against the Comcast Defendants are all rendered unenforceable for inequitable conduct due to Katz's intentional failure to disclose the DeBruyn patent to the USPTO.

**C.    Katz intentionally failed to disclose the Florafax brochure.**

76.    On information and belief, prior to Katz paying the issue fee on June 29, 1994 for the '575 patent, Katz had knowledge of a brochure dated January 22, 1986 and circulated by Florafax during this timeframe ("the Florafax brochure"). However, Katz did not disclose this brochure to the USPTO prior to the payment of the issue fee for the '575 patent.

77.    On information and belief, the Florafax brochure is material to at least the '575 patent. On information and belief, the Florafax brochure discloses a service for providing a recorded message in association with the delivery of a floral bouquet. After purchasing the bouquet, the sender receives a card from the florist that includes a telephone number and an ID number printed thereon. On calling the number indicated, the sender is prompted to enter the ID number and record a personal message. When the flowers are delivered, a corresponding card instructs the recipient to call a specified telephone number to hear the sender's prerecorded message. The message may only be played twice before it is automatically erased. On information and belief, the Florafax "Talking Bouquet" system was test marketed at least as early as December 1985, thereby evidencing public use of the concepts embodied in the brochure.

78.    On information and belief, the Florafax brochure and associated service operation disclose many of the features claimed the '575 patent. For example, providing cards or tickets with an identification number printed thereon for access to an automated interactive system.

79.    On information and belief, Katz was made aware of the Florafax reference through the *First Data Resources Inc. v. West Interactive Corp.* litigation, prior to paying the issue fee for the application issuing as the '575 patent.

80.    On information and belief, notwithstanding Katz's knowledge of the Florafax brochure and its materiality, Katz failed to disclose it to the USPTO as part of the prosecution on the merits of at least the '575 patent in violation of Katz's duty of candor.

81.    On information and belief, Katz intentionally withheld the material Florafax brochure from the USPTO prior to the payment of the issue fee during prosecution of the '575 patent. On information and belief, this failure to disclose was committed with the intent to deceive the USPTO into issuing patent claims of a scope beyond that to which Katz was entitled, thereby committing inequitable conduct and rendering at least the '575 patent unenforceable.

82.    This inequitable conduct committed by Katz with respect to at least the '575 patent taints other related patents, which claim priority to the '575 patent and which claim related subject matter to which the Florafax brochure is material, rendering these related patents unenforceable.

83.    At least the '703 patent, which is a patent asserted against the Comcast Defendants, claims priority from and claim subject matter related to the '575 patent to which the Florafax brochure is also material. Accordingly, at least the '703 patent is likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '575 patent.

**D.    Katz intentionally failed to disclose Katz's own International Application WO 87/00375.**

84.    On information and belief, Katz had knowledge of and failed to disclose Katz's own published international application WO 87/00375 ("the WO '375 application") to the USPTO prior to the payment of the issue fee during prosecution of the '285 patent, which is a patent asserted against the Comcast Defendants.

85.    The WO '375 application teaches a statistical analysis system for use in conjunction with a public communication facility. When the system receives a call, a voice generator prompts the caller for information such as a key number or the caller's telephone number. If available, the caller's telephone number may be taken directly from the communication facility. After qualifying the caller using the number received, the system retrieves polling-type data from the callers which is combined with stored data to isolate a select subset of callers. The WO '375 application has the same specification as the initial U.S. '299 application Katz filed to which all other patents-in-suit claim priority and discloses much of the same subject matter incorporated in subsequent patents claiming priority to it.

86.    The WO '375 application was filed under the Patent Cooperation Treaty ("PCT") and published on January 15, 1987. Pursuant to 35 U.S.C. § 102(b), the WO '375 application may be considered prior art for any claims having an effective filing date more that one year after the January 15, 1987 publication date.

87.    The '285 patent was filed more than one year after the publication date of January 15, 1987. The '285 patent incorporates additional subject matter in its specification relative to the WO '375 application. Further, the '285 patent claims additional subject matter

relative to the WO '375 application. Therefore, the WO '375 application can be considered as prior art for any new matter that was added and claimed in the '285 patent.

88.     The WO '375 application would have been material to the patent examiner in determining what claims, if any, Katz was entitled to in the '285 patent-in-suit. For example, the materiality of the WO '375 application was confirmed by the USPTO when it was cited against the '984 patent by the patent examiner in March of 1991. In particular, the WO '375 application would be relevant to the basic elements claimed in the '285 patent, such as prompting callers with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data and qualifying callers.

89.     On information and belief, Katz was aware of the duty to disclose information material to the patentability of any of Katz's pending patent applications. Katz had personal knowledge of the public disclosure of the WO '375 application. Katz failed to disclose the WO '375 application to the patent examiner prior to payment of the issue fee during prosecution of the '285 patent. When Katz finally cited the reference to the Examiner, Katz buried it amongst numerous other prior art references without pointing out its materiality. Therefore, the WO '375 application was not considered by the patent examiner in determining patentability as part of the prosecution on the merits of the '285 patent.

90.     On information and belief, Katz intentionally withheld the WO '375 application from the USPTO as part of the prosecution on the merits of at least the '285 patent with the intent to deceive the USPTO into issuing patent claims of a scope beyond that to which Katz was entitled, thereby committing inequitable conduct and rendering the '285 patent asserted against the Comcast Defendants unenforceable.

25

**E.    Katz intentionally failed to disclose Periphonics prior art.**

91.    On information and belief, Katz intentionally withheld from the USPTO highly relevant and material prior art by the Periphonics Corporation ("Periphonics") in order to obtain claims to which Mr. Katz was not entitled.  On information and belief, in April 1993, in connection with *First Data Resources, Inc. v. West Interactive Corp.*, CV 91-4471-TJH, U.S. District Court, Central District of California ("the West case"), materials bearing Bates numbers W72807-W73756 ("the West materials") were provided to Harold Wurst, Esq. of Nilsson, Wurst & Green ("the Nilsson firm").  The Nilsson firm was involved in prosecuting many of Mr. Katz's patent applications, some of which would ultimately issue as the patents asserted against the Comcast Defendants.

92.    In U.S. Patent Application No. 08/306,456, which issued as the '965 patent, Katz stated: "During litigation [the West case], a voluminous quantity of prior art, that is, some 500 items (including single or plural related documents grouped together), were identified by the defendant.  However, during pretrial procedures, the defendant distilled the applied art to 59 separate items (including single or plural related documents)."  Paper No. 3. filed November 4, 1994.  Katz also stated: "The voluminous quantity of art identified during litigation, excluding the 59 items (Set I), is listed on the second set of forms PTO-1449 (Supplemental I)."  Paper No. 3, filed November 4, 1994.

93.    Katz made the same statements in the applications that issued as the '707 patent (IDS filed November 14, 1994), the '285 patent (IDS filed September 20, 1994) and the parent application of the '893 patent (IDS filed November 7, 1994 in Application No. 08/306,751).  Other applications use varying language that refers the examiner to the references disclosed during prosecution of the '707 patent.  These other applications include the '863 patent

(Amendment filed May 6, 1996, at 44; IDS filed October 18, 1996), the '762 patent (IDS filed January 16, 1997) and the '551 patent (IDS filed October 2, 1996).

94.    In connection with making these statements and references during prosecution of the '707, '965, '285, '893, '863, '762 and '551 patents, Katz submitted to the USPTO certain materials containing Bates numbers within the range of the West materials. On information and belief, in addition to those submitted, the original West materials further included a number of Periphonics references, including: (1) Bank-From-Home Product Description, Publication #3000002, January 7, 1980 ("the Bank-From-Home reference") (W73055-W73095); and (2) Periphonics VoicePac System with Peritalk/Announce Product Description and User Guide, Publication #3270601C, 1987 ("the VoicePac reference") (W732 19-W73302).

95.    On information and belief, the Bank-From-Home reference and the VoicePac reference are highly relevant to many claims of the patents asserted against the Comcast Defendants. On information and belief, the Bank-From-Home reference describes such limitations of claims of the patents asserted against the Comcast Defendants as structures for interfacing, storing, qualifying, switching, processing, voice generation, verifying credit and designating, as related to callers to the disclosed system. On information and belief, the VoicePac reference describes such limitations of claims of the patents asserted against the Comcast Defendants as interfacing callers to the system and transferring callers to a customer service representative.

96.    While other references containing Bates numbers within the range of the West materials were submitted to the USPTO during prosecution of the '707, '285, '893, '863, '762 and '551 patents, the Bank-From-Home and VoicePac references were, on information and belief, knowingly withheld during prosecution of at least these patents with knowledge of their

materiality. Katz's failure to disclose this material prior art was a violation of the duty of candor and good faith owed to the USPTO, and constitutes inequitable conduct. Thus, at least the '707, '285, '893, '863, '762 and '551 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of their respective applications.

97.    Other patents asserted against the Comcast Defendants are directly related to these patents, and are thus rendered unenforceable. For example, the '134, '065 and '360 patents have specifications substantially identical to those of the '707, '863, '762 and '551 patents, and rely for priority on the '739 patent, also having a substantially identical specification. The '134, '065 and '360 patents contain claims with subject matter that includes subject matter that was at issue during prosecution of the '707, '863, '762, '551 and '739 patents. In addition, due to the interrelatedness of all of these patents, Katz has disclaimed any patent term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the USPTO indicating that the claimed inventions were not patentably distinct.

98.    Thus, on information and belief, Katz's inequitable conduct renders each of the '707, '285, '893, '863, '762, '551 '134, '065 and '360 patents asserted against the Comcast Defendants unenforceable in its entirety.

## II.    KATZ INTENTIONALLY FAILED TO INFORM THE USPTO OF INCONSISTENT POSITIONS TAKEN DURING PROSECUTION.

### A.    Katz failed to inform the USPTO of inconsistent positions taken with respect to the Daudelin patents.

99.    At least three patents to Daudelin, including the Daudelin '955 patent and U.S. Patent Nos. 4,797,910 ("the Daudelin '910 patent") and 4,922,519 ("the Daudelin '519 patent"), collectively ("the Daudelin patents"), were cited during the prosecution of certain of patents asserted against the Comcast Defendants and related patents. The specifications for the Daudelin

'910 and the '519 patents are substantially similar, and all three disclose aspects pertaining to DNIS (Dialed Number Identification Service) functionality.

100.    On information and belief, Katz repeatedly took inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times during the prosecution of the patents asserted against the Comcast Defendants and failed to inform the different patent examiners of Katz's inconsistent positions.

101.    During prosecution of the '734 patent, Katz labeled various prior art references as either "D," "A," "D/A" so as to indicate whether or not the reference was "pertinent to DNIS capabilities," "pertinent to ANI capabilities," or both, respectively.  During the prosecution of the '734 patent, Katz did not label the Daudelin '910 patent as either "D," "A," "D/A."  By failing to label the Daudelin '910 patent as either "D," "A," "D/A," Katz, thereby, characterized the Daudelin '910 patent as not being pertinent to either DNIS or ANI capabilities.

102.    Whereas, as part of the prosecution of the '551 patent, Katz took a position that was contrary to the position Katz took as part of the prosecution of the '734 patent. Specifically, as part of the prosecution of the '551 patent, Katz labeled the Daudelin '910 patent with a "D." Katz, therefore, took the position, as part of the prosecution of the '551 patent, that the Daudelin '910 patent was pertinent to DNIS capabilities.

103.    Likewise, during the prosecution of the '893 patent, Katz characterized the '910 Daudelin patent as having "some disclosure of DNIS."

104.    Subsequently, however, as part of the prosecution of the '360 patent, Katz took a position that was contrary to those taken as part of the prosecution of the '551 and '893 patents. Specifically, as part of the prosecution of the '360 patent, Katz asserted that "Daudelin does not teach DNIS."

105.    On information and belief, Katz took inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times and failed to inform the different patent examiners of Katz's prior inconsistent positions with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '551, '734, '893 and '360 patents asserted against the Comcast Defendants unenforceable.

106.    At least, the '120, '065, and '223 patents, which are patents asserted against the Comcast Defendants, all claim priority to one of the '551, '734, '893 and '360 patents and claim subject matter related to these patents to which the Daudelin patents are material. Accordingly, at least the '120, '065, and '223 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '551, '734, '893 and '360 patents.

107.    Accordingly, at least the '551, '734, '893, '120, '065, '223 and '360 patents asserted against the Comcast Defendants are all rendered unenforceable for inequitable conduct due to Katz's intentionally taking inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times and failing to inform the different patent examiners of Katz's prior inconsistent positions with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled.

### B.    Katz failed to inform the USPTO of inconsistent positions taken with respect to the Riskin patent.

108.    On information and belief, Katz also failed to inform the USPTO of inconsistent positions that Katz took with respect to U.S. Patent No. 4,757,267 to Riskin ("the Riskin patent").

109. As part of the prosecution of the '075 patent, Katz stated "that the Riskin patent discloses the utilization of ANI and DNIS signals to accomplish telephone routing. . . ."

110. As part of the prosecution of the '120 patent, Katz took a position that was contrary to the position that Katz took as part of the prosecution of the '075 patent. Specifically, as part of the prosecution of the '120 patent, Katz labeled the Riskin patent with an "A," and not with a "D" or "D/A." By labeling the Riskin patent with an "A" only, Katz characterized the Riskin patent to the patent examiner as disclosing aspects pertaining to ANI ("Automatic [calling party] number identification") only, and not DNIS.

111. By taking inconsistent positions as to the scope of the Riskin patent at different times and failing to inform the patent examiner of the prior inconsistent positions, and, on information and belief, having the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, Katz committed inequitable conduct, thereby rendering at least the '120 patent unenforceable.

112. At least the '223 patent, which is asserted against the Comcast Defendants, claims priority to the '120 patent and claims subject matter related to the '120 patent, to which the Riskin patent is material. Accordingly, at least the '223 patent is likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '120 patent.

113. Accordingly, at least the '120 and '223 patents asserted against the Comcast Defendants are rendered unenforceable for inequitable conduct due to Katz's intentionally taking inconsistent positions as to the scope of the Riskin patent at different times and failing to inform the patent examiner of the prior inconsistent positions with the intent to deceive the USPTO into issuing patent claims of a scope beyond that to which Katz was entitled.

### III.    KATZ INTENTIONALLY FAILED TO IDENTIFY OR DISCLOSE MATERIAL INFORMATION FROM RELATED LITIGATIONS OR PROCEEDINGS.

114.    Pursuant to the MPEP, including § 2001.01 and § 2001.06(c), "[w]here the subject matter for which a patent is being sought is or has been involved in litigation," each individual associated with the filing and prosecution of a patent application before the USPTO has a duty to bring to the attention of the USPTO "the existence of such litigation and any other material information arising therefrom"

115.    On information and belief, as set forth below, as part of the prosecution of several of the patents asserted against the Comcast Defendants, Katz failed to identify or disclose to the patent examiners material information from several litigations of which Katz was aware, which involved related patents and material subject matter relating to the patents asserted against the Comcast Defendants, with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby constituting inequitable conduct.

#### A.    Katz failed to disclose the *West Interactive Corp. v. First Data Resources, Inc.* litigation.

116.    On October 24, 1990, West Interactive Corp. ("West") brought a declaratory judgment action, Civil Action No. 90-0-688, against First Data in the United States District Court for the District of Nebraska.  West alleged, *inter alia*, that the '739, '150 patents and U.S. Patent No. 4,939,773 ("the '773 patent) are invalid on several theories including prior art.

117.    West's allegations in that suit are material to at least the '285, '863, '551, '734, '762, '893, '120, '065, '134, '703, '223, '984, '252, '415, '021, '309, '707, '547 and '360 patents asserted against the Comcast Defendants, all of which claim priority to at least the '739 patent and/or are directed to similar subject matter as provided in the '739 patent.

118.    On information and belief, during the prosecution of these patents asserted against the Comcast Defendants, Katz was aware of the *West Interactive Corp v. First Data Resources, Inc.* litigation and of material information arising therefrom, as set forth in the pleadings and other papers arising therein.

119.    Nonetheless, on information and belief, Katz did not disclose the existence of the *West Interactive Corp. v. First Data Resources, Inc.* litigation to the patent examiners of the '984, '252, '285, '863, '551, '734, '762, '893, '120, '065, '965, '134, '703, '223, '415, '021, '309, '707, '547 and '360 patents asserted against the Comcast Defendants as part of prosecution of these patents. Moreover, on information and belief, Katz did not disclose to the patent examiners of these patents asserted against the Comcast Defendants, the nature of West's allegations relating to the invalidity and unenforceability of the '739, '150 and '773 patents as set forth in the pleadings and other papers arising in the litigation. On information and belief, this failure to disclose was committed with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

**B.    Katz failed to disclose the *First Data Resources, Inc. v. 900 Million, Inc. et al.* litigation.**

120.    On October 9, 1990, First Data brought a suit, Civil Action No. 90-5418-HLH, against 900 Million, Inc. and others in the United States District Court for the Central District of California for the alleged infringement of the '739, '150 and '773 patents.

121.    The defendants in the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation filed a counterclaim alleging invalidity and unenforceability of the '739, '150 and '773 patents.

33

122. The defendants' counterclaims in the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation are material to at least the '984, '252, '285, '863, '551, '734, '762, '893, '120, '065, '134, '703, '223, '415, '309, '707, '021, '547 and '360 patents asserted against the Comcast Defendants, all of which claim priority to at least the '739 patent.

123. On information and belief, during the prosecution of these patents asserted against the Comcast Defendants, Katz was aware of the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation and of material information arising therefrom, as set forth in the pleadings and other papers arising therein.

124. Nonetheless, on information and belief, Katz did not disclose the existence of the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation to the examiners of the '984, '252, '285, '863, '551, '734, '762, '893, '120, '065, '965, '134, '703, '223, '415, '309, '707, '021, '547 and '360 patents asserted against the Comcast Defendants as part of prosecution of these patents. Moreover, on information and belief, Katz did not disclose to the patent examiners of these patents asserted against the Comcast Defendants, the nature of the defendants' allegations relating to the invalidity and unenforceability of the '739, '150 and '773 patents as set forth in the pleadings and other papers arising in the litigation. On information and belief, this failure to disclose was committed with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

C. **Katz failed to disclose the *First Data Resources, Inc. v. West Interactive Corp., et al.* litigation.**

125. On August 20, 1991, First Data brought suit, Civil Action No. 91-4471-TJH, against West Interactive Corp. and Fantasy Sports Concepts, Inc. in the United States District

Court for the Central District of California for the alleged infringement of the '739, '150 and '298 patents.

126.    The defendants in the *First Data Resources Inc. v. West Interactive Corp., et al.* litigation filed a counterclaim alleging, *inter alia*, the invalidity and unenforceability of the '739, '298 and '150 patents.

127.    The defendants' allegations in that suit are material to at least the '984, '252, '285, '863, '551, '734, '893, '120, '134 and '703 patents asserted against the Comcast Defendants, all of' which claim priority to at least the '739 patent.

128.    On information and belief, during the prosecution of these patents asserted against the Comcast Defendants, Katz was aware of the *First Data Resources Inc. v. West Interactive Corp., et al.* litigation and of material information arising therefrom, as set forth in the pleadings and other papers arising therein.

129.    Nonetheless, on information and belief, as part of the prosecution of at least the '984, '252, '863, '551, '734, '893, and '120 patents asserted against the Comcast Defendants, Katz did not disclose the existence of the *First Data Resources Inc. v. West Interactive Corp., et al.* litigation (or in the case of the '285 patent, Katz waited to report the existence of the litigation until after payment of the issue fee) as part of prosecution of these patents. In addition, during prosecution of at least the '134 and '703 patents, which are also asserted against the Comcast Defendants, although Katz disclosed a November 1994 Enterprise Communications article entitled, "West Interactive Settles with FDR: Patent Suit Settlement Could Have Major Industry Impact," Katz did not otherwise disclose the existence of the *First Data Resources Inv. v. West Interactive Corp.* et al. litigation to the examiners of the '134 and '703 patents. Moreover, on information and belief, Katz did not disclose to the patent examiners of these

patents the nature of the defendants' allegations relating to the invalidity and unenforceability of the '739, '150 and '298 patents as set forth in the pleadings and other papers arising in the litigation. On information and belief, this failure to disclose was committed with the intent to deceive the USPTO into issuing patent claims of a scope beyond that to which Katz was entitled and was therefore inequitable conduct that renders these patents asserted against the Comcast Defendants unenforceable.

### D. Katz failed to disclose the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation.

130.    On February 8, 1999, RAKTL filed suit, Civil Action No. 99-CV-592, against Micro Voice Applications, Inc. and others in the United States District Court for the Northern District of California for infringement of the '739, '153, '252, '285, '863, '734, '023 and '707 patents.

131.    In response to RAKTL's Complaint, the defendants in the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation, alleged, *inter alia*, that the '739, '153, '252, '023, '285, '707, '863 and '734 patents are invalid and/or unenforceable.

132.    The defendant's allegations in the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation are material to at least the '065, '134 and '703 patents asserted against the Comcast Defendants, which are related patents to the patents at issue in that suit.

133.    On information and belief, during the prosecution of the '065, '134 and '703 patents asserted against the Comcast Defendants, Katz was aware of the *Ronald A. Katz*

*Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation and of material information arising therefrom, as set forth in the pleadings and other papers arising therein.

134.    Nonetheless, on information and belief, as part of the prosecution of at least the '065, '134 and '703 patents asserted against the Comcast Defendants, Katz did not disclose the existence of the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc.. et al.* litigation to the patent examiners of the '065, '134 and '703 patents asserted against the Comcast Defendants as part of prosecution of these patents. Moreover, on information and belief, Katz did not disclose to the patent examiners of these patents the nature of the defendants' allegations relating to the invalidity and unenforceability of the '739, '153, '252, '023, '285, '707, '863 and '734 patents as set forth in the pleadings and other papers arising in the litigation. On information and belief, this failure was committed with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

   **E.    Katz failed to disclose the *Ronald A. Katz Technology Licensing, L.P., et al. v. AT&T Corp., et al* litigation.**

135.    On. July 8, 1997, RAKTL and MCI Telecommunications Corp. brought suit, Civil Action No. 97-CV-4453, against AT&T Corp. and others in the United States District Court for the Eastern District of Pennsylvania for infringement of the '739, '150, '298, '075, '929, 984, '631, '153, '252, '309, '023, '285, '645, '120, '707 and '863 patents and U.S. Patent No. 5,349,633 ("the '633 patent").

136.    In reply, AT&T Corp. asserted, *inter alia*, that the '739, '150, '298, '075, '929, '984, '631, '153, '252, '309, '023, '285, '645, '120, '707, '863 and '633 patents are invalid.

137.    AT&T Corp.'s allegations in the *Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp., et al.* litigation are material to at least the '762, '893 and '120 patents asserted against the Comcast Defendants, which are related to and claim related subject matter to the patents involved in that litigation.

138.    On information and belief, during the prosecution of the '762, '893 and '120 patents asserted against the Comcast Defendants, Katz was aware of the *Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp., et al.* litigation and of material information arising therefrom, as set forth in the pleadings and other papers arising therein.

139.    Nonetheless, on information and belief, Katz did not disclose the existence of the *Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp., et al.* litigation to the patent examiners of the '762, '893 and '120 patents asserted against the Comcast Defendants as part of prosecution of these patents.  Moreover, on information and belief, Katz did not disclose to the patent examiners of these patents asserted against the Comcast Defendants, the nature of AT&T's allegations relating to the invalidity of the '739, '150, '298, '075, '929, '984, '631, '153, '252, '309, '023, '285, '645, '120, '707, '863 and '633 patents as set forth in the pleadings and other papers arising in the litigation.  On information and belief, this failure to disclose was committed with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

**F.    Katz failed to disclose Patent Interference No. 103,697.**

140.    Patent Interference No. 103,697 was declared on February 13, 1996, and was finalized by November 20, 1996.  As part of that interference, the Board of Patent Appeals and Interferences ("BPAI") held that the specification of the '968 patent did not provide written

support for certain limitations of count 1—which was alleged by Katz to be fully supported by the specification of the '968 patent—and that count 1 was, therefore, "not entitled to benefit of [the '968 patent's] filing date."

141. The Board of Patent Appeals and Interferences' conclusion that the '968 patent lacked written support for certain alleged limitations would have been material to the patent examiners of the '863, '734, '762, '893, '120 and '134 patents asserted against the Comcast Defendants, for purposes of, for example, establishing the effective date of a claim for purposes of analyzing prior art. Indeed, on information and belief, all of these patents asserted against the Comcast Defendants claim priority to the '968 patent, and many of them, including at least the '863, '551 and the '134 patents, are disclaimed with respect to the '968 patent.

142. Nonetheless, on information and belief, Katz failed to bring the existence of Patent Interference No. 103,697 to the attention of the patent examiners of at least the '863, '734, '762, '893, '120 and '134 patents asserted against the Comcast Defendants. Moreover, on information and belief, Katz failed to bring to the attention of the patent examiners of at least the '863, '734, '762, '893, '120 and '134 patents the Board of Patent Appeals and Interferences' findings, i.e., that the specification of the '968 patent did not provide written support for certain limitations of count 1 and that count 1 was, therefore, not entitled to benefit of the '968 patent's filing date.

143. On information and belief, these failures to disclose were committed with the intent to deceive the USPTO into issuing patent claims of a scope beyond that to which Katz was entitled, thereby committing inequitable conduct and rendering at least the '863, '734, '762, '893, '120 and '134 patents asserted against the Comcast Defendants unenforceable.

## IV.    KATZ INTENTIONALLY FAILED TO INFORM PATENT EXAMINERS OF ADVERSE FINDINGS BY OTHERS.

144.    The MPEP § 2001.06(b) states that each individual associated with the filing and prosecution of a patent application before the USPTO has "a duty to bring to the attention of the examiner, or other [USPTO] official involved with the examination of a particular application, information within their knowledge as to other copending Unites States applications which are 'material to patentability' of the application in question." Furthermore, according to this section of the MPEP, such individuals:

> cannot assume that the examiner of a particular application is necessarily aware of other applications which are 'material to patentability' of the application in question, but must instead bring such other applications to the attention of the examiner. For example, if a particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications.

### A.    Katz failed to disclose adverse findings in related patent prosecutions.

145.    During the prosecution of the '344 patent, Katz made the false assertion that the '968 patent supported the limitation "automatic number identification (ANI) decoder means responsive to predetermined signals on said telephone trunk for providing a calling party telephone number." Further, on information and belief, Katz falsely asserted that the "[r]eferences cited are based on U.S. Patent No. 4,792,968 to Katz with a filing date of Feb. 14, 1987, of which the present application is a continuation."

146.    The examiner of the '344 patent, Examiner Brown, in a 1990 Office Action, refuted Katz's assertion that the '344 patent application was a continuation of the '968 patent, noting, "the present application is <u>not</u> a continuation of '968. . . ." Rather, the pending application that resulted in the '344 patent was a continuation-in-part, in which new matter was added to the specification, and as such, any claims directed to the new matter were not entitled to

the effective date of the '968 patent. Further, Examiner Brown rejected Katz's assertion that the '968 patent supported the automatic number identification (ANI) decoder means limitation. Specifically, Examiner Brown stated that "applicant's patent [i.e., the '968 patent] does not in fact disclose or describe an "automatic number identification (ANI) decoder means". . . ."

147.    Despite Examiner Brown's refutation of Katz's assertions that the '344 patent application was a continuation of the '968 patent and that the '968 patent supported the automatic number identification (ANI) decoder means limitation, in the subsequent Patent Interference No. 103,697, Katz claimed support for "means connected to said interface switching means for directly providing a caller telephone number from said telephone facility" in the '968 patent.

148.    Further, on information and belief, during the Patent Interference No. 103697, Katz did not inform the Board of Patent Appeals and Interferences of Examiner Brown's prior repudiation of Katz's assertion that the '968 patent supported the automatic number identification (ANI) decoder means limitation.

149.    Examiner Brown's prior repudiation of Katz's assertion would have also been material to the Board of Patent Appeals and Interferences' determination as to whether Katz was entitled to antedate the U.S. Patent No. 4,797,911 to Szlam ("the Szlam patent"), particularly in as much as the Board ultimately concluded that count 1, which was alleged by Katz to have support in the '968 patent, was found lacking by the Board. Count 1 recited, in part, "means connected to said interface switching means for directly providing a caller telephone number from said telephone facility" and "computer means. . .responsive to said caller telephone number. . . ."

150.    Even though the Board concluded that support for the count 1 was lacking in the '968 patent, as part of the prosecution of the '156 Patent in 1997, Katz again alleged, but this time to Examiner Woo, that the '968 patent provided support for the limitation of "interface means. . .for receiving automatic number identification data. . . ." Specifically, Katz alleged that the claim limitation was supported by essentially the same text Katz previously cited during prosecution of the '344 patent and in the interference proceeding.

151.    On information and belief, Katz did not inform Examiner Woo of Examiner Brown's finding of the lack of written support in the '968 patent for the limitation "automatic number identification (ANI) decoder means." Nor did Katz inform Examiner Woo of the Board of Patent Interferences' finding of a lack of written support in the '968 patent for the limitation "computer means . . .responsive to said caller telephone number. . . ."

152.    On information and belief, Katz intentionally failed to inform the Board of Patent Appeals and Interferences and Examiner Woo of the prior repudiations of Katz's false assertions that certain claim limitations relating to processing ANI were supported in the '968 patent in violation of the duty of candor with the intent to deceive the USPTO into issuing patent claims of a scope beyond that to which Katz was entitled, thereby committing inequitable conduct and rendering the '156 patent-in-suit unenforceable.

153.    Likewise, on information and belief, during prosecution of the '965 patent, Katz attempted to traverse a claim rejection of Katz's then pending claim 68 in light of the Szlam patent by falsely claiming that "Claim 68 as amended is fully supported by Applicant's earlier parent patent No. 4,792,968, filed on February 24, 1987, before . ..Szlam....".

42

154.    On information and belief, Katz failed to inform the examiner of the '965 patent of Examiner Brown's conclusion that the '968 patent specification did not support the "automatic number identification (ANI) decoder means".

155.    Examiner Brown's conclusion that the '968 patent specification did not support the "automatic number identification (ANI) decoder means" would have been material to the examiner of the '965 patent in deciding the patentability of the pending claims, particularly with respect to antedating prior art.

156.    On information and belief, Katz intentionally failed to inform the examiner of the '965 patent of Examiner's Brown's prior conclusion in violation of the duty of candor and with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '965 patent unenforceable. At least the '134 patent, which descends from the '965 patent and is asserted against the Comcast Defendants, is therefore unenforceable as well under the doctrine of infectious inequitable conduct.

157.    Likewise, during prosecution of the '551 patent, Examiner Brown rejected certain claims submitted by Katz pursuant to 35 U.S.C. § 112 for lack of written support. Specifically, Examiner Brown stated that "[t]he text actually is not found to describe how the interaction between the caller and the operator would proceed after the caller has been transferred thereto for "person-to-person" interaction, much less that such interaction necessarily would result in data entries being transferred to the memory."

158.    Katz continued prosecution of the same subject matter rejected by Examiner Brown in a subsequently filed application, which matured in the '065 patent, and again, in

another subsequently file application, which matured into the '360 patent. Both of these applications were before a different patent examiner, Examiner Weaver.

159.    On information and belief, Katz failed to inform Examiner Weaver that Examiner Brown found a lack of written support for the claimed subject matter in the prior '551 patent based on the same specification. On information and belief, Katz's failure to disclose to Examiner Weaver the finding of Examiner Brown regarding a lack of written support was in violation of Katz's duty of candor with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '360 and '065 patents asserted against the Comcast Defendants unenforceable.

**B.    Katz failed to disclose adverse findings from appeal rulings.**

160.    On information and belief, Katz failed to inform the patent examiners of certain of the patents asserted against the Comcast Defendants of the existence and outcome of certain Appeal Rulings of related patents. The outcomes of certain Appeal Rulings were, in some instances, adverse or contrary to positions Katz took during the prosecution of the patents asserted against the Comcast Defendants.

161.    For example, in Appeal No. 94-0834 (Application No. 07/640,337), the Board of Patent Appeals and Interferences found that the Barger patent, which is prior art to the patents asserted against the Comcast Defendants, disclosed a multiple format system for interacting with callers based on the callers dialing distinct telephone numbers.

162.    The Board of Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger patent would have been material to the patent examiners of at least

the '846, '156, '734, '576, '762, '893, '120, '021, '065, '134 and '703 patents with respect to any

claims reciting a multiple format limitation.

163.    Nonetheless, on information and belief, Katz failed to inform the examiners of at

least the '846, '156, '734, '576, '762, '893, '120, '021, '065, '134 and '703 patents of the Board

of Patent Appeals and Interferences' finding that the Barger patent disclosed a multiple format

system for interacting with callers based on the callers dialing distinct telephone numbers.

164.    On information and belief, Katz intentionally failed to disclose the Board of

Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger

patent, with the intent to deceive the USPTO into issuing patent claims of a scope beyond which

Katz was entitled, thereby committing inequitable conduct and rendering the '846, '156, '734,

'576, '762, '893, '120, '021, '065, '134 and '703 patents unenforceable.

165.    The inequitable conduct committed by Katz with respect to the '846, '156, '734,

'576, '762, '893, '120, '021, '065, '134 and '703 patents taints other related patents, which claim

priority to these patents and which claim related subject matter to which the Board of Patent

Appeals and Interferences' finding with respect to the scope of disclosure of the Barger patent

would have been material, thereby, rendering these related patents, including at least the '223

and '360 patents unenforceable.

## V.    KATZ INTENTIONALLY MADE FALSE CLAIMS OF PRIORITY SO AS TO AVOID THE PRIOR ART.

166.    On information and belief, during the prosecution of several patents asserted

against the Comcast Defendants, Katz made false claims of priority to earlier applications with

the intent to avoid prior art, as set forth below.

167.    For example, during prosecution of the '984 patent, which is the grandparent of the '734 patent, Katz made the false claim that "the international application [87/00375] is not properly a reference against the present case." This assertion is false, since international application [87/00375], *i.e.*, the WO '375 application, was published more than one year prior to the filing of the '734 patent, and therefore, is prior art to any new matter introduced and claimed in the '734 patent, which was based on a continuation-in-part application. Therefore, on information and belief, Katz intentionally misrepresented the priority dates for certain claims during the prosecution of the '984 patent, in order to antedate the WO '375 application.

168.    Similarly, on information and belief, during prosecution of the '734 patent, Katz made a false claim to priority in an attempt to antedate a prior art reference by Hester. Katz stated "the reference by Hester bears a date of 1985, apparently 'September'. In that regard, it is noteworthy that the present application is related to a parent case filed July 10, 1985." On information and belief, however, the parent application Katz referenced does not disclose toll free calls or 900 "pay-per-call" modes. Therefore, on information and belief, none of the claims in the '734 patent reciting limitations directed to toll free calls or 900 "pay-per-call" modes are entitled to claim priority to that parent application's July 10, 1985 filing date. Therefore, on information and belief, during the prosecution of the '734 patent, Katz intentionally misrepresented the priority dates for such claims reciting limitations directed to toll free calls or 900 "pay-per-call" modes in order to antedate the Hester reference.

169.    Likewise, on information and belief, during prosecution of the '734 patent, Katz mischaracterized Katz's pending application with respect to the prior art U.S. Patent 4,797,913 to Kaplan ("the Kaplan patent"), which was filed on August 4, 1987. Specifically, Katz stated "U.S. Patent No. 4,797,913 (Kaplan et al.) is directed to a telephonic vending system involving

the use of (ANI) information for qualification (column 2, line 50). However, it should be noted that in that regard, the present application is entitled to a priority date earlier than that of the subject reference." On information and belief, Katz's statement was false at the time it was made. At the time Katz made this statement, there were claims in Katz's application which contained and claimed new subject matter pertaining to ANI that was not supported by the earlier filed application, and were, therefore, not entitled to an earlier priority date. Therefore, on information and belief, Katz intentionally misrepresented the priority dates for claims during the prosecution of the '734 patent, in order to antedate the Kaplan patent.

170.   On information and belief, in violation of the duty of good faith and candor, Katz made the above-identified false claims to priority in order to avoid the prior art and to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '984 and '734 patents unenforceable.

171.   In addition, the inequitable conduct committed by Katz with respect to the '984 and '734 patents taints other related patents, including the '120 and '223 patents asserted against the Comcast Defendants, which claim priority to these patents and which claim related subject matter to which the prior art patents are material, rendering these related patents unenforceable.

## VI.   CONCLUSION

172.   As set forth above, Katz engaged in a pattern and practice of inequitable conduct throughout the prosecution of the patents asserted against the Comcast Defendants and/or other related patents that infected, either directly or indirectly, all of the patents asserted against the Comcast Defendants, thereby rendering them unenforceable for inequitable conduct.

173.   The Comcast Defendants are, therefore, entitled to a judicial declaration that each of the patents asserted against the Comcast Defendants is unenforceable.

**PRAYER FOR RELIEF**

WHEREFORE, the Comcast Defendants pray for judgment as follows:

1.     That the Complaint be dismissed with prejudice against the Comcast Defendants in its entirety;

2.     That judgment be entered for the Comcast Defendants and that Katz take nothing;

3.     For judgment that the patents-in-suit are invalid, unenforceable, and/or not infringed by the Comcast Defendants;

4.     For judgment that some or all of the Comcast Defendants' allegedly infringing activities are and have been authorized pursuant to one or more license agreement(s) with Katz.

5.     For judgment that Katz breached the CCH License Agreement by filing the Complaint and denying the Comcast Defendants benefits due to them under the CCH License Agreement;

6.     For specific performance by Katz of the terms of the CCH License Agreement;

7.     For a declaratory judgment that each of the Comcast Defendants is, and has been for so long as it has been controlled by, controlling, or under common control with CCH, an "Affiliate" of CCH as defined by the CCH License Agreement or otherwise licensed to use the patents-in-suit within the field of use of the CCH License Agreement;

8.     That Katz be ordered to pay the Comcast Defendants' costs of suit in this action;

9.     That Katz be ordered to pay the Comcast Defendants' attorneys' fees pursuant to 35 U.S.C. § 285; and

10.    That the Comcast Defendants be awarded such other relief as this Court deems just and proper.

OF COUNSEL:

Matthew B. Lehr
Anthony I. Fenwick
Suong Nguyen
Jill Zimmerman
Veronica Abreu
Davis Polk & Wardwell
1600 El Camino Real
Menlo Park, CA, 94025
Tel:  (605) 752-2015

Dated:  August 22, 2007
814377 / 31932

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, Delaware 19801
    Tel:  (302) 984-6000
    Fax:  (302) 658-1192
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Comcast Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on August 22, 2007, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on August 22, 2007, I have Electronically Mailed the document to the following person(s):

Andre G. Bouchard
John M. Seaman
Bouchard Margules & Friedlander, P.A.
222 Delaware Avenue, Suite 1400
Wilmington DE 19801
abouchard@bmf-law.com
jseaman@bmf-law.com

Raymond N. Scott, Jr.
Fish & Richardson P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899
rscott@fr.com

Francis G.X. Pileggi
Fox Rothschild LLP
919 N. Market Street, Suite 1300
Wilmington, DE 19801
fpileggi@foxrothschild.com

Robert T. Haslam
Andrew C. Byrnes
Heller Ehrman LLP
275 Middlefield Road
Menlo Park, CA 94025-3506
robert.haslam@hellerehrman.com
andrew.byrnes@hellerehrman.com

Michael K. Plimack
Dale A. Rice
Heller Ehrman LLP
333 Bush Street
San Francisco, CA 94104-2878
michael.plimack@hellerehrman.com
dale.rice@hellerehrman.com

Lauren A. Degnan
Ruffin B. Cordell
Fish & Richardson P.C.
1425 K Street, N.W., Suite 1100
Washington, D.C. 20005
degnan@fr.com
cordell@fr.com

Michael Chibib
Fish & Richardson P.C.
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, TX 78701
chibib@fr.com

                              /s/ David E. Moore
                              Richard L. Horwitz
                              David E. Moore
                              Potter Anderson & Corroon LLP
                              Hercules Plaza – Sixth Floor
                              1313 North Market Street
                              P.O. Box 951
                              Wilmington, DE 19899-0951
                              (302) 984-6000
                              rhorwitz@potteranderson.com
                              dmoore@potteranderson.com

801959 / 31932 (Comcast)